CASE No. 961.

## STATE v. GILL.

1. Objection by a prisoner that jurors were improperly excused by the Circuit judge, comes too late after verdict, unless it appears that defendant was injured thereby.

2. The Circuit judge excused two jurors, one of whom, summoned under the general *venire*, lived at a distance from the court-house, and in his stead was called a juror from that vicinity; but the prisoner, afterwards put upon his trial for murder committed at the court-house, did not exhaust his peremptory challenges. *Held*, that there was no ground for arresting the judgment.

3. In a trial for murder, A was not permitted to repeat declarations made by deceased, a short time before his death, which deceased prefaced with the words "If I die." B, a brother of deceased, afterwards testified that deceased, a few moments before his death, when fully aware of his condition, made a statement, charging the prisoner with cutting him, and that A was then present. *Held*, that the Circuit judge did not err in permitting this declaration of deceased to go to the jury.

4. Dying declarations, to be admissible in evidence, need not be, in any case, reduced to writing.

5. The jury before agreeing upon a verdict in a capital case, returned into court and inquired of the presiding judge, whether they could, upon conviction, recommend the defendant to mercy; to which inquiry he replied affirmatively. *Held*, that the judge committed no error in this, or in failing then to instruct the jury that such recommendation could not affect the sentence.

Before PRESSLEY, J., Hampton, June, 1880.

The case is fully stated in the opinion of the court. The prisoner was not in this court at the hearing, his presence having been waived by his counsel of record.

*Messrs. W. P. Murphy, M. W. Gary* and *J. W. Moore,* for appellant.

*Mr. Solicitor Gantt,* contra.

January 10th, 1881. The opinion of the court was delivered by

McIVER, A. J. The defendant in this case having been convicted of murder, made a motion in arrest of judgment, and also for a new trial in the Circuit Court, and his motions there being refused, he now renews them here upon the same grounds taken in the court below.

The motion in arrest of judgment is based upon the ground that the Circuit judge erred in discharging two of the jurors, one of whom had been drawn from the county at large and summoned under the general *venire.* It appears that when the list of jurors, drawn and summoned for the term at which this case was tried, was called over, only twenty-eight answered. The court thereupon ordered sixteen additional jurors to be drawn from the box containing the names of persons residing within five miles of the court-house. After the jurors so drawn had been summoned, ten of them appeared, making, with those already in attendance, thirty-eight jurors, whereupon the Circuit judge, of his own motion, and for cause satisfactory to himself, excused two of the jurors, one of whom lived at a considerable distance from the court-house. It does not appear that there was any challenge of the array, nor was there any objection made until after the verdict in this case was rendered. So that even if these jurors were improperly excused, the objection could not avail the defendant, unless it appeared that he was injured thereby. *Gen. Stat.,* ch. *CXI.,* § 29, *p.* 523 ; *State* v. *Stephens,* 11 *S. C.* 319.

In this case there is nothing to show that the defendant's rights were impaired or in any way interfered with by the discharge of these two jurors. It does not appear that his right of peremptory challenge, which, it must be remembered, is a right to *reject* and *not* a right to *select* jurors, (*State* v. *Wise & Johnson,* 7 *Rich.* 412,) was in any way abridged, and we are at a loss to conceive how the discharge of these jurors, even if it had been illegal or irregular, could operate to the prejudice of any of the rights of the defendant. We are unable to appreciate the force of the argument urged here, that the discharge of a juror who lived at a considerable distance from the court-house, and the substitution of one drawn " from the vicinity in which the hom-

icide was committed, where the prejudice would naturally be strongest against defendant," was necessarily injurious to him. We have always supposed that one of the peculiar merits of our system of trial by jury, is that the jurors were of the vicinage, and Blackstone, in 3 *Com.* 379, speaks of the right of a person accused of crime to be tried by his *neighbors* and equals as a "transcendent privilege." But even if there was any force in this argument, the defendant could, by the exercise of his right of peremptory challenge, have excluded every one of those who were drawn from the immediate vicinity where the homicide was committed, to supply the deficiency in the original panel, and, as it does not appear that his peremptory challenges were exhausted, the objection taken cannot avail the defendant. *State* v. *Price,* 10 *Rich.* 351; *State* v. *McQuaige,* 5 *S. C.* 429.

But we are by no means satisfied that any error was committed in discharging the two jurors. The Circuit judge undoubtedly had the right to excuse jurors for good and sufficient cause, and certainly in the absence of any proof to the contrary, we would assume that the judge in this instance had complied with the law by requiring the affidavits provided for by the statute. We are satisfied, therefore, that there was no error in refusing the motion in arrest of judgment.

The first ground on which the motion for a new trial is based, is that, under the circumstances of the case, the dying declarations of the deceased should not have been admitted in evidence. It seems that the first witness offered by the state to prove the dying declarations, one W. H. Bartless, testified as follows: "Was with Connolly [the deceased] some time before, and continued with him to the time of his death; deceased was rapidly sinking; I said to him: 'You are going to die, and if you have anything to say you had better say it.' He then said: 'If I die,'" at which point he was stopped, and objection was made that the form of expression used indicated that the deceased had not then lost hope, and, therefore, the declarations were incompetent; and the objection was sustained. Subsequently another witness, J. Q. Connolly, a brother of the deceased, was offered by the state for the same purpose, who testified as follows: "Was with deceased at the time of his death; he was very low; asked for

his wife; was told that she was sent for; replied: 'Lord, I'll never see her—I am going to die.' W. H. Bartless was also there. I said to deceased: 'Who cut you?' He said: 'Gouthe held me and Gill cut me.' Deceased was conscious of his approaching death; asked for a preacher to pray for him; took my hand; told me good-bye and died a few minutes afterwards. W. H. Bartless was present at the time; I am brother to the deceased."

The rule as to the admissibility of dying declarations is, that two things must be made to appear before the declarations can be admitted. *First.* That the death of the declarant was imminent. *Second.* That he was so fully aware of this as to be without any hope of life. *State* v. *Quick,* 15 *Rich.* 349; *State* v. *McEvoy,* 9 *S. C.* 212.

It is very clear that the testimony of J. Q. Connolly, if believed by the judge before whom the case was tried, was amply sufficient to establish both of these propositions, and whether it should be believed was a question for the Circuit judge alone, so far as the *competency* of the declarations was concerned. It is argued, however, that the testimony of J. Q. Connolly should not have been regarded as sufficient to warrant the admission of the dying declarations, because, as it is contended, he was contradicted by the other witness offered by the state. Even were this so, we do not see how we could impute error to the Circuit judge in holding the testimony of Connolly sufficient proof of the preliminary facts necessary to the admissibility of the declarations. But we are unable to perceive any necessary conflict between the two witnesses. They might have been, and probably were, speaking of two different conversations, or, at least, of two different parts of the same conversation. Bartless, manifestly, was speaking of a conversation between *himself* and the deceased, while Connolly was speaking of a conversation which *he* had with deceased. Bartless was with the deceased *some time* before his death, and at what particular time the conversation he was proceeding to narrate took place, does not appear, while the conversation testified to by Connolly was only a few minutes before the death of the deceased. It is true that Bartless was present when the conversation testified to by Connolly took place, but he

does not say that no such language was used, or that he did not hear deceased say what was testified to by Connolly; and it may be that if Bartless had been permitted to proceed with his testimony, he would have testified as Connolly did as to what deceased said a few minutes before his death. Be that as it may, however, it is very certain that the Circuit judge had before him testimony amply sufficient to establish the facts necessary to be proved, in order to render the dying declarations competent evidence, and we see no error in admitting them.

The next ground is, that there was error in admitting parol testimony, showing the dying declarations of the deceased, without first requiring proof that there was no opportunity to reduce the same to writing at the time they were made. We are not aware of any authority for the proposition upon which this ground is based, and none has been cited to us. Indeed, from the fact that this ground was not urged in the argument here, we presume that the counsel have felt themselves unable to sustain it; and we know of no law which requires that dying declarations should be reduced to writing before they can be received in evidence, where there is opportunity to do so at the time they are made.

The last ground upon which the motion for a new trial is based is stated in the following language: "It is respectfully submitted that when the jury having returned into court and asked instructions of the presiding judge 'if they [the jury] could, upon conviction, recommend the defendant to mercy,' his Honor erred in this, that, though he instructed them that they could so bring in a verdict, he omitted to instruct them that such recommendation would, in no way, affect the sentence." It appears from the "case" as submitted here, that after the jury charged with this case had retired to their room they returned into court and asked the judge "if they [the jury] could add to their verdict a recommendation of the defendant to mercy." They were told that they might do so, but they were not informed that such a recommendation "would in no wise alter the sentence of the law or mitigate the punishment." The verdict, as rendered, was in the following form: "Guilty, and recommended to mercy."

It will be observed that the judge was simply asked whether

the jury could recommend the prisoner to mercy in case they convicted him, and not what would be the consequence or effect of such a recommendation. If, therefore, the judge, instead of simply answering the question put to him by the jury, had volunteered a statement of the consequences which would or would not follow from such a recommendation, we think there would have been more reason for complaint. The province of the jury was simply to pass upon the guilt or innocence of the accused, and they had nothing whatever to do with the consequences flowing from their verdict; and if the judge had undertaken to explain to them what would be the effect of their finding, his conduct might have exposed him to the charge of endeavoring improperly to influence the minds of the jurors. But when, in response to their inquiry, he simply informed them that they could do that which it has been the long-established practice for juries to do—a practice extending back as far as our earliest reported cases, (*State* v. *Frink*, 1 *Bay* 165)—we cannot say that there was any error in so doing. After most diligent search, we have been unable to find any authority condemning this practice, and, on the contrary, in the case of *State* v. *Frink, supra,* the practice was not only sanctioned but was allowed to operate to the benefit of the prisoner by securing a postponement of the execution of the sentence until an opportunity could be had for applying for executive clemency. So, also, we find that in case of *State* v. *O'Brian*, 22 *La. An.* 27, it was held that the addition to a verdict of a recommendation to mercy did not vitiate the verdict.

It is argued here that there was error in informing the jury that they might add to their verdict a recommendation to mercy, because the fact that they made such an inquiry indicated that there were some on the jury who would not consent to a verdict of guilty upon any other terms. This argument rests wholly on conjecture, and one which we could not for a moment entertain, because, without the shadow of evidence to support it, such a conjecture necessarily involves the gravest imputations upon the jury. Their business was to try the issue presented to them, and if they were satisfied, from the evidence, of the prisoner's

guilt, it was their duty to say so, no matter what might be the consequences. If, on the other hand, they were not satisfied of his guilt, it was equally their duty to say so; and to suppose that any juror who doubted as to the guilt of the prisoner could be induced to unite in a verdict which his judgment did not approve, would be to suppose that such juror was willing to violate his oath, and that, too, in a case involving the gravest consequences. Such a supposition we do not feel at liberty to make in the absence of any evidence to sustain it. On the contrary, we think that the more reasonable supposition, and one which involves no imputation whatever upon the jury, is, that the jury being all satisfied of the guilt of the prisoner, saw some extenuating circumstances in the case which induced a desire to recommend the prisoner to mercy, in the hope that it would have some weight with that department of the government to which such appeals are properly addressed, and only desired to know whether they would be permitted by the court to add such a recommendation to their verdict. We see no error, therefore, in the answer which the Circuit judge made to the question propounded by the jury, and, on the contrary, think, if he had answered otherwise, he would have deprived the defendant of a benefit secured to him by a long and well-established practice which we nowhere find condemned, but, on the contrary, sanctioned, and which, in this case, may, as it has in others, prove to be of inestimable value.*

The Tennessee cases cited in the argument for appellant (*State v. Crawford*, 2 *Yerg.* 60, and *Cochran* v. *State*, 7 *Humph.* 544,) do not apply, for in each of those cases there was evidence submitted showing that one of the jurors was not satisfied of the guilt of the prisoner, and only consented to the verdict because he believed that the recommendation to mercy would secure the pardon of the prisoner. Here, however, there is no such evidence, and in the absence of such evidence it would be a most unwarrantable assumption on our part to presume that any one of the

---

* The sentence of the prisoner, in this case, has been commuted by the governor to imprisonment at hard labor in the state penitentiary for life.—RE-PORTER.

jurors in this case had perjured himself by agreeing to a verdict which he did not believe was sustained by the testimony.

The judgment of the Circuit Court is affirmed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.