THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SALVA-
TORE TROMBINO, Appellant.*

First Department, April 7, 1933.

* Affd., 262 N. Y. 689.

*Peter L. F. Sabbatino*, for the appellant.

*Sol Boneparth* of counsel [*Herman J. Fliederblum* with him on the brief; *Charles B. McLaughlin, District Attorney*], for the respondent.

MARTIN, J. The defendant was convicted by a jury of the crime of robbery in the first degree as a second offender, for which he received a severe sentence. The defense was an alibi. The identification by the victim of the robbery was positive. It is argued, however, that the complainant was not able to minutely describe a number of unimportant details such as the apparel of the robber and his manner of walking, which details were enlarged upon on cross-examination in an attempt to discredit the evidence of the witness on the question of identification. The complainant had a full and ample opportunity to fix in his mind an accurate description of the robber's face and general appearance, for the complainant was not only robbed but the robber took the time to compel the victim to remove his trousers so that he could not follow in pursuit. The fact that the perpetrator of the crime stood in full view of the victim while committing the robbery gave the witness an opportunity to study defendant's features and thus enable him to be positive in his identification. The complainant was unable to state the color of the robber's eyes because the defendant wore green goggles

at the time. The attempt at disguise indicates that the robber was an experienced hold-up man and intended to commit a crime.

The exact identification by the complaining witness coupled with the utter failure to prove the alibi were sufficient to establish the guilt of the defendant. After reading this record, one is inevitably led to the conclusion that the alibi was wholly without foundation in fact. The witnesses produced to prove the alibi contradicted each other and the stories they told clearly established that they were unworthy of belief. A false alibi may be considered as a convincing circumstance tending to prove the guilt of a defendant.

In Colby's Criminal Law (Vol. 2, p. 201) the conclusion to be drawn from a false alibi is stated as follows: " Of all kinds of exculpatory defence, that of an *alibi*, if clearly established by unsuspected testimony, is the most satisfactory and conclusive, and is absolutely incompatible with the possibility of the truth of the charge. This defence, however, is easily concocted and frequently resorted to falsely and is therefore often entertained with much distrust; but though it may lie under a great and general prejudice, and should be heard with uncommon caution, yet, if it appear to be founded in truth, it is the best negative evidence that can be offered, and in many cases is the only evidence which an innocent man can offer. An unsuccessful attempt to establish an *alibi* is always a circumstance of great weight against the prisoner, because the resort to that species of defence implies an admission of the truth and relevancy of the facts alleged, and the correctness of the inference drawn from them, if they remain uncontradicted; and where the defense of *alibi* fails, it is generally on the ground that the witnesses are disbelieved, and the story considered to be a fabrication."

In *Rex* v. *Brennan* (30 Howell's State Trials, 58, at p. 79) the court gives a very clear statement on the value of an alibi: " The defense of the prisoner is what is called an alibi. That at the time he is charged to have been committing the crimes mentioned in the indictments, at Brett's house — he was not and could not be there, for he was then in or near his own house, at the distance of three-quarters of a mile from the house of Brett. This sort of defense having often been abused is heard with suspicion; yet when true, it is the very best and often the only defense, that an innocent man can make. The truth of this sort of defense is not always to be ascertained by the direct testimony of the witnesses called to prove it. Several witnesses are seldom produced in such cases without its being known, that they agree with each other in the substantial and principal fact they are to relate; and as in general, it is not to be

expected that a prosecutor should come with evidence prepared to meet this sort of defense, the usual test of its truth or of its falsehood, where the witnesses are unknown to the jury, is a cross-examination of the witnesses, kept asunder and fairly conducted under the eye and observation of the jury.— And here, you should remember, that differences, or contradictions in circumstances, otherwise trivial, become important in showing the truth or falsehood of such narrative."

In an effort to reverse the judgment of conviction, other matters have been seized upon as a basis for this appeal, especially the admission in evidence of the gun and the remarks of the district attorney. The fact that the gun when found was in a dusty condition is explained by the fact that it was found on the top partition of an old-fashioned mirror in the defendant's room, a place where a quantity of dust had no doubt accumulated and where the gun had evidently been placed for the purpose of hiding it after it had been used to commit the robbery.

Sufficient evidence was introduced to warrant the admission of the gun, it having been found in the possession of the defendant. It was described as a " black gun " and was referred to on a number of occasions during the trial. The district attorney asked the complainant the following questions with reference thereto: " Q. Did he point this revolver at you, Mr. Tenore? A. Right away, yes. * * * Q. Is there any question in your mind about this man being the man that stuck you up with this black gun, People's Exhibit 1 for identification? A. No."

This testimony alone was sufficient to warrant the introduction of the gun in evidence.

The defendant emphasizes the fact that on the morning following the robbery the defendant appeared in the neighborhood. Such an appearance by a defendant in the neighborhood where a crime has been committed is not unusual. Experienced criminals frequently make such an appearance in order to ward off suspicion.

The defendant stresses the point that the summation of the district attorney emphasized too strongly the fact that the defendant had been previously convicted. When we consider that the indictment alleged a prior conviction, the proof of which became necessary upon this trial, and the fact that the prior conviction was proved, it seems to us that the effort to assign error because the jurors were reminded of the fact that this man had been previously convicted, does not warrant much consideration, especially in view of the charge by the court. The court said: " A conviction cannot rest on merely a strong suspicion of guilt. * * * If the jury find some evidence in this case which raises a presumption of some

kind against the defendant, it is nevertheless insufficient legal evidence and as a matter of law insufficient legal evidence is no evidence. * * * They cannot convict him upon suspicion; it must be upon the evidence beyond a reasonable doubt."

The attorney for the defendant asked the court to charge the jury as follows: " I further request the Court to charge that even if a person was a lawless and dangerous person in the past, it does not justify conviction where the evidence relating to the fact of the crime is insufficient or there is a doubt." The court so charged.

The defendant's attorney then made the following request of the court: " I further request the Court to remind the jury that proof of a former conviction affords no evidence that defendant committed the crime in question, but is material only on the question of sentence." This request was coupled with the emphatic statement by the court that a former conviction was no evidence that defendant was guilty of the crime in question. That clearly removed any harmful inference that the comment of the district attorney might have raised, even if we assume it was erroneous.

In view of the fact that the requests to charge were fully complied with and that the main charge instructed the jury to wholly disregard the prior conviction in considering defendant's guilt or innocence, there seems to be no valid ground for the assertion by the defendant that the subject was not properly placed before the jury by the court.

We are fully convinced that there was no mistake with reference to the identity of the defendant, and that he was proved guilty beyond a reasonable doubt, after a fair and impartial trial. The significant fact that defendant failed to take the witness stand and contradict evidence which he could easily have contradicted may now be considered by the court. In *People* v. *Smith* (114 App. Div. 513) this court said: " Although the jury were not warranted, and the court is not warranted, in drawing any inference of guilt from his failure to take the stand, both jury and court are warranted in taking the facts and circumstances, which, if he were innocent, he might have controverted or explained, most strongly against him."

We are of the opinion that the judgment of conviction should be affirmed.

FINCH, P. J., SHERMAN and TOWNLEY, JJ., concur; O'MALLEY, J., dissents and votes for reversal and a new trial.

O'MALLEY, J. (dissenting). As a second offender the defendant has been convicted of robbery in the first degree and sentenced

to prison for thirty years. The complainant was the sole witness on identification. The man who robbed him at the point of a gun wore large, green goggles. The complainant secured only a side view of the defendant's eyes. He testified they were large, but was unable to state their color. Nor was he able to state whether the criminal wore a hat or a cap or whether, if he wore either, it was pulled down over his eyes. He was unable to give any description of the manner in which the robber was dressed, the color of his clothes or of his shoes, or of the manner of walk.

The hold-up took place about eight o'clock in the evening as the complainant was checking up cash receipts in his store. He testified that the sum of $445 was taken from him. He was prevented from immediately pursuing the robber because the latter had taken possession of his trousers. However, the complainant immediately notified the police by telephone.

The following morning, about ten or ten-thirty o'clock, he saw the defendant pass by his place of business and observed that he entered a cigar store in the neighborhood. At the time he thought the defendant looked like the man who held him up and notified the police. After the arrest the complainant went to the station house where he again saw the defendant. His identification was not immediate, but after he was taken by the arresting officer to a hallway and was asked, " How does he look to you? " he then said that the defendant was the one who robbed him. So, too, on the trial, his identification was positive.

When the defendant was arrested neither the green goggles nor any money was found upon him, nor were the complainant's trousers recovered. A black revolver found on the top of a mirror in a room occupied by the defendant and others, in the home of the defendant's parents, and which the complainant said " looked like " the revolver used in the hold-up, had dust on it when found by the officer. The defendant's father testified that it belonged to him, and not to the defendant.

In my view this evidence was insufficient to establish beyond a reasonable doubt that the defendant was the person who committed the crime. In addition, it is to be noted that the defendant appeared the following morning in broad daylight in front of the complainant's store. Is it likely that he would have subjected himself to the possibility of an arrest by exposing himself in full view of the complainant immediately after the crime? And is it probable that he would not have had on his person some of the proceeds of his crime?

I think, too, that prejudicial error was committed. There was insufficient evidence of identification of the revolver introduced in

evidence. The complainant testified only that it looked like the gun the robber used. Its admission in evidence was objected to and an exception taken. In my judgment it should not have been received as no proper foundation was laid. Particularly is this so for the reason that the dust on the revolver would indicate that it had not been used the previous evening in the manner disclosed by the evidence.

Improper statements prejudicial to the defendant were made in the summation of the district attorney. In referring to the identification and the arrest, the district attorney stated: " Picks out a defendant who has been here before." When this was objected to the trial justice ruled that the remark was proper. Again, the district attorney, referring to the same subject, stated to the jury: " A man that has been convicted of the same kind of charge before." Objection that this remark was improper was overruled and exception taken.

It is true that the defendant was a second offender and the indictment so charged and proof in support of this allegation in the indictment was offered before the jury. However, it seems to me that the remarks of the district attorney were calculated to prejudice the defendant. They indicate that a conviction was being urged upon the ground that the defendant had a prior conviction. The jury were not entitled to consider the prior conviction on the issue of defendant's guilt. His identity was the only issue for their consideration. (*People* v. *Gowasky*, 244 N. Y. 451.)

I am not unmindful that the defendant did not take the stand nor of the fact that there were some contradictions and inconsistencies in the testimony of witnesses called on his behalf to establish his alibi. Nevertheless, I am of opinion that the evidence of identification here was of too flimsy a character to warrant the severe judgment pronounced. In addition there were the prejudicial errors already discussed.

I, therefore, vote for a reversal and a new trial.

Judgment affirmed.