380

The People of the State of New York, Respondent, *v.* Gustave Schapiro, Appellant.

First Department, November 18, 1938.

*George J. Todaro,* for the appellant.

*Charles C. Tillinghast, Jr., Deputy Assistant District Attorney,* of counsel [*Thomas E. Dewey, District Attorney*], for the respondent.

Untermyer, J. The defendant was convicted of the crime of robbery in the first degree and sentenced to a term of imprisonment of ten to thirty years.

At about nine-thirty o'clock on the morning of September 14, 1936, a robbery occurred at the place of business of Trencher Furs, Inc., at 277 Grand street, in the city of New York, in the course of which furs of the value of about $46,000 were stolen. Two days later the defendant was apprehended for vagrancy and subsequently indicted for the crime of robbery in the first degree,

grand larceny in the first degree, assault in the first degree and criminally receiving stolen property. Only the first count was submitted to the jury and the issue presented was whether the defendant was sufficiently identified as a participant in the crime or whether, as the defense contended, he was at home and in bed at the time of its commission.

The establishment of Trencher Furs, Inc., consists of a showroom floor on the street level and a factory in the basement. According to the People's witnesses, all the employees of this establishment were herded in a corner of the basement by the defendant, with revolver in hand, while an accomplice, who has not been apprehended, removed a number of mink coats and capes from a rack. The time which elapsed during the commission of the crime was estimated variously at from about twelve to twenty minutes. About sixteen persons were in the premises who had an opportunity to observe the perpetrators of the crime.

Only two of these persons identified the defendant. They are Irving Fass and Sally Kluger, both employees of the Trencher Company, and both of whom had been shown photographs of the defendant by detectives before the identification. Fass testified that he was talking to Bernard Trencher at the head of the stairs leading to the basement when a man appeared with a revolver, and forced them down the stairs and into a room occupied by the finishing department. After facing a mirror for about three minutes, Fass was ordered to turn and then stood for five or ten minutes facing the intruder. In about ten minutes everyone in the basement was placed against the wall, and a few minutes later two more employees were brought down. Fass identified the defendant as the man who had held the revolver and testified that even while facing the wall he could observe the accomplice removing the fur coats from the rack. Although unable to recall any distinctive features of the defendant, Fass had previously identified the defendant in the felony court.

Sally Kluger, who worked in the finishing department of Trencher's, testified that she sat facing the man with the revolver, whom she identified as the defendant, for about two minutes and then observed him and his accomplice through a mirror beside which she worked. She was then placed with Fass and the other employees facing the wall.

After the defendant was arrested, detectives showed his photograph to all persons present during the commission of the crime, including Fass and Kluger. The detectives then took seven of Trencher's employees to the felony court, but only Fass picked out the defendant in the lineup. After Kluger had failed to point

out the defendant at the felony court, the detectives had several conversations with her at the premises of the Trencher Company. It is true that, when first arrested, the defendant stated that he did not know with certainty where he had been on the morning of September fourteenth at the time of the robbery, but that he might have been at the Second Avenue Turkish Baths. But it must be remembered that when this was said the defendant was charged only with vagrancy and, therefore, could hardly have realized the significance of his whereabouts in connection with a charge of robbery.

The defendant denied any connection with the crime and offered an alibi to the effect that at that time he was at his home in Brooklyn. His testimony was corroborated only by his brother. Bernard Trencher, called as a witness by the defense, testified that he was in the basement with the employees for about fifteen minutes, but that he could not identify the defendant as the person who had committed the crime. There was thus presented a clear issue of fact for the consideration of the jury as to the sufficiency of the identification of the defendant. We would not be disposed to interfere with the jury's verdict on that issue were it not for an error which is directly related to the identification of the defendant as the perpetrator of the crime.

Immediately after the witness Kluger had been sworn, there occurred a whispered conversation with the court whereupon the court stated in the presence of the jury: " We will dispense with the address. The District Attorney has the address, haven't you? " to which the prosecutor replied in the affirmative. From this colloquy the jury could not fail to infer that the witness had requested not to be required to state her address on account of the danger of retaliation by the defendant for the testimony she would give. Again, during the cross-examination by the defendant's attorney of this witness she persisted in stating that she had failed to " pick out " the defendant in the felony court because she was afraid to do so, although it was not even suggested that the defendant had induced that fear. Although these statements were properly stricken out by the court as not responsive to the question, they are not without considerable significance in the light of subsequent instructions by the court to the jury.

After the court had charged the jury, the defendant's attorney requested further instructions to the effect that the failure of other employees of the Trencher Company to testify would warrant the jury in drawing the inference that their testimony would have been prejudicial to the People's case. This request the court properly

denied, but, in denying it, charged as follows: " Gentlemen, as was stated in the course of the trial, the witnesses were available to both sides. I presume that the District Attorney has called the only witnesses who would say whether or not they would identify the defendant. *Whether or not the other witnesses would identify him or not, or could identify him or not is a matter for you men to think over; and also as to the reasons why, if they did recognize somebody, that they wouldn't identify him.*"

We think it was error to suggest to the jury that it might draw an inference that these other witnesses had failed to testify on account of fear or intimidation. No evidence was given that anyone had been threatened by the defendant, and the witness Trencher, who was unable to identify him, testified that he had not been intimidated. Under these circumstances the jury might have been disposed to mistrust an identification by only two of the many persons who had witnessed the crime. Yet, they were told, without evidence to that effect, that they might infer that these others could identify the defendant but had refused to do so for " reasons " not appearing in the record but which it was proper " for you men to think over." Giving due consideration to the circumstances which had preceded these instructions of the court to the jury, we think the error was so prejudicial to the defendant as to require a new trial.

The judgment should be reversed and a new trial granted.

O'MALLEY and COHN, JJ., concur; MARTIN, P. J. and GLENNON, J., dissent and vote for affirmance.

MARTIN, P. J. (dissenting). The identification of the defendant on the trial by the People's witnesses Fass and Kluger was unhesitating, unequivocal and positive, and was sufficient to establish defendant's presence at the scene of the crime beyond any possible reasonable doubt.

When he was arrested the defendant was unable to state where he had been at the time of the robbery. Detective Daniel F. Ryan questioned the defendant at the time of his arrest on September 16, 1936, two days after the robbery. This officer's testimony as to his conversation with the defendant in the presence of Detective Castano is as follows: " I said, ' Where were you on September the 14th, 1936? ' He says, ' I don't know.' Then he says, ' I may have been in a Turkish Bath.' "

Detective Edward Castano testified as follows with respect to the conversation he and Detective Ryan had with the defendant: " We asked him where he was on the morning of September the

14th, of 1936, and he said he couldn't remember but he may have been in the Second Avenue Baths that night."

On the trial the defendant admitted telling the detectives who arrested him that he went to " the baths " once in a while. He denied, however, that he took part in the robbery and testified he was at home in bed at the time it was committed. His brother's testimony supported this alibi. The verdict indicates that the jury rejected the alibi testimony. The failure of the alibi is persuasive of guilt. (*People* v. *Trombino*, 238 App. Div. 61; affd., 262 N. Y. 689.)

The defendant contends that he was denied a fair trial because the jury was allowed to infer that witnesses had been intimidated as the result of improper tactics employed on behalf of the defendant. There is not a word in the record concerning the efforts of any one to influence witnesses. On cross-examination of the witness Kluger the defendant's counsel persisted in questioning her as to whether in the felony court she identified the defendant. She answered that she was afraid to. The first time this answer was given the trial court immediately instructed the jury to disregard the remark. Knowing what the answer would be, defendant's counsel persisted in repeating the question and for the third time the witness answered that she was afraid to pick defendant out in the felony court. There is nothing to indicate what prompted this fear or to connect it in any way with the defendant. Where declarations or acts of a witness are used against him as showing an inconsistent attitude or reflecting on his credibility or character, it is always open to him to explain the apparent contradiction or situation. (2 Ford on Evidence, § 157; 3 Wharton's Criminal Evidence [11th ed.], § 1408.)

When the trial court had completed its charge to the jury, defendant's counsel requested a further charge with respect to the inferences that might be drawn from the failure of the People to produce other witnesses who had been at the scene of the crime. The court pointed out that the witnesses were available to both sides, and that the presumption was that the district attorney had called only those witnesses who would say whether or not they would identify the defendant. The court left it for the jury to determine whether the other witnesses would or could identify the defendant and the reasons why, if they did recognize anybody, they would not identify him. No exception was taken to this and, upon analysis, we find that is not prejudicial to defendant. Many people are reluctant to testify in criminal cases, and the reluctance is not based on fear alone.

The sole issue presented for the jury was the identification of the defendant. The testimony submitted on behalf of the People is most convincing. The attempt of the defendant to maintain that the principal issue was clouded by a collateral issue of intimidation finds no support in the record. There is no evidence to show that defendant was not accorded a fair trial.

The judgment appealed from should be affirmed.

GLENNON, J., concurs.

Judgment reversed and a new trial granted. ·