UNITED STATES v. GOLDSTEIN et al.
Steuer and Levigno.

No. 199.

Circuit Court of Appeals, Second Circuit.

May 6, 1943.

360

Henry K. Chapman, of New York City, for appellants Benjamin Goldstein, Charles Goldstein, and Harry Steuer.

Louis Halle, of New York City, for appellant John Levigno.

Mathias F. Correa, U. S. Atty., of New York City (Frederick H. Block, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The appellants were indicted with seventeen others by a grand jury sitting in the Southern District of New York. They were charged in a single count with conspiring in that district from about September 1, 1938, to January 20, 1941, to defraud the government of taxes on distilled spirits in violation of the conspiracy statute, 18 U.S.C.A. § 88. Twelve of those indicted pleaded guilty before trial; there was a severance as to one; three were acquitted and the remaining four, Benjamin Goldstein, Charles Goldstein, Harry Steuer and John Levigno, were tried in the Southern District, found guilty and sentenced. Those four have all appealed and urge as grounds for reversal a lack of evidence to support their conviction as well as errors at the trial.

The evidence was sufficient to have justified the jury in finding at least as follows: The two appellants Goldstein were brothers having a substantial interest in Benjamin Goldstein Co., Inc., of which Benjamin Goldstein was president. That corporation had for some time before the beginning of the conspiracy charged in the indictment dealt extensively in produce at premises known as 96-98 Murray St., New York City.

Some time in September, 1938, Benjamin Goldstein told Robert Knowles, a real estate agent, that he would like to rent the entire building at 102 Murray St., for a man named Stern who had recently come from Baltimore. He told Knowles to use his name as a reference. Knowles soon procured a month-to-month lease of the premises to Stern, whom he never saw. A few months later Knowles, again at the request of Benjamin Goldstein, had that lease cancelled and procured a two-year lease which he delivered to Goldstein. The rent was paid in cash brought to the office of the landlord by various men of whom one was one of the conspirators who pleaded guilty before trial. After the building at 102 Murray St. was leased in the way stated, the two appellants Goldstein used the ground floor for their produce business. They were there often and were in a position to know what went on at least on that floor. There was a one ton hoist in an elevator shaft near the front of the building. This shaft ran to the top floor of the five-story building and a push button which one on the ground floor could conveniently use to sound an alarm to those on the floors above was found in it.

On October 11, 1940, this loft building was lawfully searched and a large still was seized. The three upper stories of the building were devoted to the distillery. The still that had been erected there had a 2,500 gallon pot; a column running from the third to the fifth floor; seven mash vats, each of a capacity of 7,000 gallons; and was capable of producing 1,000 gallons of alcohol a day. Its estimated cost was about $15,000.

This still had been in operation about two years when it was seized and during that time supplies for it and its product passed into and out of the building by way of the first floor. Appellant Levigno bought a large quantity of sugar which was delivered first to what was called a "drop" and there transferred to other trucks which were unloaded at the premises at 102 Murray St. in such a way that a government agent watching the place couldn't see what was being taken from a truck, but could tell that the vehicle was being unloaded, and then at times was being loaded. Purchases of sugar for the still, much of which though not all made by appellant Levigno, at times amounted to more than twenty-five tons a week and yeast for a week sometimes cost as much as $225. After the still was seized Levigno saw the merchant from whom he had purchased large quantities of sugar and paid him a balance of $1,-

600 then owed on that account. He also then told the merchant not to have anything to say if he came to court.

Appellant Steuer worked for Benjamin Goldstein Co., Inc., and letters addressed to Stern, who was apparently fictitious, were claimed by him when the postman called. Steuer in this way used to receive one or two letters a month addressed to Stern and when the postman asked Benjamin Goldstein if it was all right to deliver that mail that way the latter said that it was.

Appellant Charles Goldstein was the chief salesman for Benjamin Goldstein Co., Inc. When the premises were raided on October 11, 1940, the officers got there about a quarter to five in the morning and found a truck backed up to the ground floor of the building where the Goldstein produce business was located. They found bags containing alcohol near the truck and in the premises on the first floor. Charles Goldstein was found near or behind some of those bags inside the building and was arrested. It was shown that he had, while B. Goldstein & Company was still using electrical service at 102 Murray St., talked with a service clerk of the Consolidated Edison Company and arranged to have electrical service furnished there in the name of Goldstein Bros. Produce Company, Inc., whose mailing address was given as 97 Warren St., Room 62, in care of Mr. Stern.

What has been mentioned does not exhaust the evidence showing the relationship of the appellants to the alleged conspiracy but as the remainder covers generally their acquaintance and association with the admitted conspirators it will not be needful to go into it in detail. As is true of many agreements to break the law, this one seems not to have been made formally and proof of it is largely circumstantial. In deciding on appeal whether the evidence supported the verdict all of it is to be considered in the light most favorable to the government and conflicts which can fairly be resolved in the latter's favor should be. United States v. Manton, 2 Cir., 107 F.2d 834, 839; United States v. Gallo, 2 Cir., 123 F.2d 229.

On such a basis the jury might well have found beyond a reasonable doubt, as it evidently did, that Benjamin Goldstein arranged the lease in furtherance of the conspiracy and with his brother Charles moved the produce business into the first floor of the leased premises to serve as a cover for the still on the floors above; that they with Steuer's help kept up this blind and were ready to warn those above with the push button in the elevator shaft should danger threaten; and that appellant Levigno was active in the purchase of needed supplies for the still. That is enough to prove the agreement and the overt acts in willing furtherance of it which the conspiracy statute makes necessary before the agreement becomes a crime. See, United States v. Valenti, 2 Cir., 134 F.2d 362, dec'd March 11, 1943.

The claimed errors committed during the trial are not serious. The testimony of the merchant that Levigno had paid him $1,600 after the still was seized and had told him to say nothing if he came to court is said to have been inadmissible because it related to an occurrence after the conspiracy ended. We need not consider whether that evidence was admissible in any event against Levigno alone for we think it was admissible generally as it was received. It cannot be said that the conspiracy which was amply proved without this evidence was ended merely because this particular still had been seized and some of the conspirators arrested. The conspiracy was "to defraud the United States by evading and defeating, and attempting to evade and defeat, the payment of Internal Revenue taxes duly imposed by law on distilled spirits." Undoubtedly that part of the conspiracy which involved the manufacture of alcohol with the still that was seized at 102 Murray St. had been frustrated and the arrests may well have checked the activities of the conspirators taken into custody; but to say the unlawful agreement had been terminated when Levigno paid the bill and admonished the merchant to say nothing in court would mean that the conspirators no longer planned to defraud the government by evading the payment of distilled spirits taxes due. That would be an unwarranted assumption quite contrary to what would naturally be expected. Come what may, the determination of the conspirators not to pay whatever part of such taxes they could still evade was doubtless present. It was all one agreement of which only a part at most had been made impossible of performance. See, Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. ——. And efforts to avoid detection of the fraud which was

the gist of the conspiracy were still timely though they might be fruitless.

A witness produced by the government, who had previously stated that appellants, Benjamin Goldstein and Levigno, had visited the apartment of one of the conspirators who pleaded guilty, was somewhat reluctant to identify them in court, and the judge, finding the witness was hostile, permitted the district attorney to make the identification more positive by means of cross examination. That was in the exercise of a sound discretion and entirely proper. Di Carlo v. United States, 2 Cir., 6 F.2d 364.

Since this appeal was argued appellant, Benjamin Goldstein, has moved in this court for an order remanding the cause to the district court to permit him to move for a new trial there on the ground of newly discovered evidence. Without indicating any opinion on the merits of his proposed motion our mandate will go down with leave to him to make such a motion in the district court.

Judgment affirmed.