UNITED STATES v. KRULEWITCH.
No. 217, Docket 20926.

Circuit Court of Appeals, Second Circuit.
May 11, 1948.

944

John F. X. McGohey, U. S. Atty., of New York City (Frederick H. Block, Bruno Schachner and John C. Hilly, Asst. U. S. Attys., all of New York City, of counsel) for appellee.

Jacob W. Friedman, of New York City for appellant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is an appeal from a judgment of conviction and sentence on appellant's fourth trial on the same indictment, the first having resulted in jury disagreement, the second in a conviction—reversed by this court on appeal—and the third in a mistrial. We assume familiarity with the opinion on the former appeal, United States v. Krulewitch, 2 Cir., 145 F.2d 76, 156 A. L.R. 337, and rely on that for a statement both of the nature of the charge, violating

the White Slave Traffic Act [1] and conspiring to do so,[2] and of the evidence, much of which has again been shown, to the extent that it was there disclosed. Additional facts supported by the evidence will be referred to as necessary in discussing the points now relied upon for reversal.

The claimed errors are (1) that, after granting the appellant's motion to suppress certain evidence obtained through an illegal search of the appellant's apartment, the court admitted other evidence upon the assurance of the district attorney that it had been obtained independently of that search and without an investigation of its own to determine the truth of that assertion; (2) that the appellant was denied the right to show in cross-examination of the government's principal witness, Mrs. Sorrentino,[3] where that witness was living at the time of the trial; (3) that statements of a co-conspirator were admitted as evidence against the appellant though they were made after the alleged conspiracy was ended; (4) that a witness who testified concerning a conversation he had with the appellant about the rental of a lodging house in Miami, Fla., known as the El Chico Hotel, was allowed to state his "understanding," gained from what the appellant said to him, of the use the appellant intended to make of the leased property; (5) that evidence tending to show that Mrs. Sorrentino had attempted to blackmail the appellant was excluded; (6) that the jury was instructed that a finding that the interstate transportation of the woman for an immoral purpose not amounting to prostitution would satisfy the requirements for conviction; (7) that the judge failed to charge that the evidence of the woman alleged to have been illegally transported by the appellant should be scrutinized closely and considered with great caution; (8) that certain requests to charge were erroneously denied; and, finally, (9) that an inquiry as to whether or not the jury might recommend clemency was inadequately answered. In addition the appellant while this appeal was pending moved in this court for a remand to the district court to enable him to proceed with an application for a new trial. The motion was denied with the proviso that if the district court saw fit to request a remand, the request would be granted. Appellant argues that the district court refused to make the request without sufficient investigation of the facts upon which appellant's motion was based.

In our opinion no reversible error has been shown. There were several instances when objection was made to evidence which the government sought to introduce, the objections being based on the assertion of appellant's counsel that the evidence was the result of clues obtained in the illegal search. Each time, however, the evidence was admitted upon the assurance of the prosecuting attorney that the evidence had been made available by investigation independent of the search. The point now made is that, whenever a new item of evidence was challenged, the court was bound before admitting it to take testimony as to its origin.

It is, of course, now settled law in federal courts that evidence is inadmissible not only when obtained during an illegal search but if derived from information gained in an illegal search. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann. Cas.1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426; see also Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312. Moreover, once it is shown that the search is illegal, "the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree" at the same time leaving "ample opportunity to the Government to convince the trial court that its proof had an independent origin." Nardone v. United States, supra, 308 U.S. at page 341, 60 S.Ct. at

---

[1] 18 U.S.C.A. §§ 398, 399.
[2] 18 U.S.C.A. § 88.

[3] Also known as, inter alia, "Joyce," and so called on the earlier appeal.

page 268, 89 L.Ed. 307. How that shall be done must necessarily be left to the unabused discretion of the court, depending upon the circumstances, to the end that the defendant's rights be safeguarded and at the same time the needed continuity of the trial be preserved unbroken by a defendant's repeated and inadequately supported assertion that the evidence is of illegitimate origin. Needless to say, if the time and continuity factors were wholly disregarded, the disruptions of a criminal trial might well as a practical matter end only when the ingenuity and perseverance of counsel for the defendant had been exhausted. The necessarily somewhat elastic procedure for solving the problem is authoritatively stated in Nardone v. United States, supra, 308 U.S. at page 342, 60 S.Ct. at page 268, 89 L.Ed. 307: "Therefore claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity. * * * The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding in federal trials, including a well-established range of judicial discretion, subject to appropriate review on appeal, in ruling upon preliminary questions of fact. Such a system as ours must, within the limits here indicated, rely on the learning, good sense, fairness and courage of federal trial judges." We find here no violation of that rule. The evidence in question could have been procured wholly by investigation unconnected with the illegal search. Defense counsel did no more than to assert that the evidence was unlawfully obtained. Under these circumstances, we think, the trial court's acceptance of the assurance of the prosecuting attorney, who presumably was in possession of actual knowledge as to the origin of the evidence, was not an abuse of discretion.

Mrs. Sorrentino, or "Joyce," the girl the appellant was accused of illegally transporting from New York to Florida, was the chief witness for the government. The first question asked her on cross examination was where she was then living. She said she did not "care to disclose that"

and a direct answer was not then demanded. However, after she had been excused to permit other witnesses to testify and then been recalled and cross examined at some length, the following occurred:

"Q. Where do you live now, Mrs. Sorrentino?

"Mr. Hilly: Objected to if your Honor please.

"A. I wouldn't say because he would be up there bothering me.

"The Court: That question was asked the other day and she said she would prefer not to state it.

Mr. Hilly: If Mr. Todarelli wants the address I will give it to him, but I am not going to put it on the record. I do not think it is material on the record, if your Honor pleases.

"Mr. Todarelli: I think we are entitled to know that, your Honor.

"The Court: In my discretion I will exclude the question.

"The Witness: Thank you."

 Appellant claims this ruling was erroneous and it is true that the place where a witness for the government is living is undoubtedly a proper subject of cross examination. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 219, 75 L.Ed. 624. But unless the denial of the right to have the witness so testify deprives the defense of the information or of its timely production, the right, we think, can be of no importance to the defense except for the purpose of laying some foundation for impeachment. Here the information was offered before the question was excluded. It was then available to the defense for the asking. Thus the appellant's only argument can be that he was wholly deprived of the opportunity to place the witness's testimony in its "proper setting" so that the jury might interpret it "in the light reflected upon it by knowledge" of her environment or to attack her credibility by, for example, identifying her with her community so that independent testimony could be sought and offered of her reputation for veracity there or by showing that her testimony in chief was biased because given "under the

coercive effect" of her detention by federal officers. Alford v. United States, supra, 282 U.S. at pages 691, 692, 693, 51 S.Ct. at page 220, 75 L.Ed. 624.

But here the witness's environment had already been brought out on direct, as well as cross-examination. It had already been shown that she had been a prostitute since her teens. She had admitted on cross-examination that she was living at the time of the trial in an illicit relationship and had been doing so for about eleven months. She had readily stated that she had previously lied about this very case in a sworn statement to an F. B. I. agent. She had conceded that she had attempted to blackmail the appellant and that she had been arrested upon several occasions and spent time in at least three reformatories. Under these circumstances, it can hardly be said here, as it was in the Alford case, that "The trial court cut off in limine all inquiry on a subject with respect to which the defense was entitled to a reasonable cross examination."

■ Moreover, the witness was the same one characterized in our former opinion [145 F.2d 78] as "an unruly and extremely unstable person" and her actions at this trial disclosed by the record show as before that the judge "was faced with a hysterical woman, probably never well balanced emotionally, and in any event enervated by a life from girlhood of carousing and debauch." And the court had the duty to protect her, as the Alford case states, "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate" her. It could well have been thought that, if she were forced to disclose in open court the name of the man with whom she was living and their address, it was likely that she would thereby become even less controllable and thus would make it even more difficult to arrive at the truth. When the information sought from her was offered the defense, we think it became a matter of discretion whether she should be forced to supply it, and that discretion we believe to have been exercised wisely under the circumstances.[4]

■ The evidence of the government supported its allegations that the witness just mentioned, Mrs. Sorrentino, was transported from New York to Florida by the appellant and that in so doing he acted in concert with Miss Sookerman, who had been indicted for that conspiracy, and convicted on the previous trial. It appeared on this trial that Mrs. Sorrentino had been arrested in December, 1941 upon her return from Florida and taken to Rochester, N. Y., where she was visited by Miss Sookerman. The witness was then permitted over the appellant's objection to testify that the co-conspirator, after having asked the witness if she had talked yet and been told that she had not, said to her, "Well, don't until we get you a lawyer." And then continued, "Be very careful what you say," followed by "It would be better for us two girls to take the blame than Kay [the defendant] because he couldn't stand it, he couldn't stand to take it." The objection was that the alleged conspiracy ended with the transportation and that this statement of the co-conspirator, having been made thereafter, consequently was not binding upon this appellant. See Fiswick v. United States, 329 U.S. 211, 217, 67 S.Ct. 224, 91 L.Ed. 196; Galatas v. United States, 8 Cir., 80 F.2d 15, 23, 24, certiorari denied, 297 U.S. 711, 56 S.Ct. 574, 80 L.Ed. 998. But while it might conceivably be held that this evidence was admissible to show appellant's intent,[5] we prefer to rest our deci-

[4] The witness of course should not have volunteered, "I wouldn't say because he would be up there bothering me," as from this the jury might have inferred that her reason for refusing to state her address was fear of retaliation by appellant. Cf. People v. Shapiro, 255 App. Div. 380, 7 N.Y.S.2d 607. But no objection on this score or motion to strike this testimony was made, and we do not think the failure of the trial court to strike this testimony or declare a mistrial on its own motion was a "plain error" within Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687.

[5] Cf. United States v. Rubinstein, 2 Cir., 151 F.2d 915, certiorari denied, 326 U.S. 766, 66 S.Ct. 168, 90 L.Ed. 462.

sion on another ground. We think that implicit in a conspiracy to violate the law is an agreement among the conspirators to conceal the violation after as well as before the illegal plan is consummated. Thus the conspiracy continues, at least for purposes of concealment, even after its primary aims have been accomplished. The statements of the co-conspirator here were made in an effort to protect the appellant by concealing his role in the conspiracy. Consequently, they fell within the implied agreement to conceal and were admissible as evidence against the appellant. Cf. United States v. Goldstein, 2 Cir., 135 F.2d 359; Murray v. United States, 7 Cir., 10 F.2d 409, certiorari denied, 271 U.S. 673, 46 S.Ct. 486, 70 L.Ed. 1144. While Bryan v. United States, 5 Cir., 17 F.2d 741,[6] is by implication directly to the contrary, we decline to follow it.

■ Another government witness testified that he was the tenant in a store on the ground floor of a lodging house in Miami, Florida, known as the El Chico Hotel, and that the appellant inquired of him if he could "lease the upstairs." The witness then testified that he told the appellant that he didn't have anything to do with the upstairs and told him where he could find the owner of the building. When asked if he had any further conversation with the appellant, the witness said he tried "to find out what was going in upstairs," and asked the appellant some questions. Asked if the appellant "made answers to those questions," the witness testified: "He made some sort of an answer; it has been so long ago that I can't remember exactly what it was. Seemingly there was something said that he led me to believe they weren't going to sell merchandise or something upstairs, they were going to operate." He was then asked, "And after your conversation with this man did you have any understanding as to what— from your conversation with him—did you have any understanding as to what the place was going to be used as?" Objection was made on the ground that the answer called for the "conclusion" of the witness but the answer was allowed and was, "In

accordance with my belief at that time the gentleman led me to believe that there was going to be the same as had been operated there sometime before a house of prostitution." A motion for a mistrial was at once made and the court, before ruling upon it, asked the witness whether the understanding he had just stated was the result of something the defendant said to him. The witness answered that it was and added over objection that if he had been asked that question at the first trial he would very likely have been able to answer it but that he couldn't recall the exact words. The motion for a mistrial was then denied.

What happened here did not offend the rule excluding opinion of a lay witness. Here the witness, as commonly occurs, was trying in vain to reproduce the identical language used in a conversation he had had so long before that his memory was unequal to the task. As he said, "It has been quite some time ago, but it is to the best of my recollection; I was trying to find out what was going in upstairs." He then was permitted to give his understanding of what was said to him—in effect the substance of what was said. The evidence was the best that the circumstances permitted and was properly put before the jury for whatever it was worth. 7 Wigmore on Evidence, §§ 1962, 1969; United States v. Cotter, 2 Cir., 60 F.2d 689, 693, 694, certiorari denied, 287 U.S. 666, 53 S. Ct. 291, 77 L.Ed. 575; Central R. Co. of New Jersey v. Monahan, 2 Cir., 11 F.2d 212, 213, 214.

■ The appellant attempted to show that he had made a complaint to the police that Mrs. Sorrentino had tried to extort money from him after she had returned from Florida and they had become estranged. This evidence was excluded. Perhaps it was admissible to corroborate his testimony of the attempted blackmail by showing that he acted at once as a man so threatened might reasonably be expected to act. But the fact that Mrs. Sorrentino had tried to blackmail appellant had no relevance except in so far as it showed her bias and prejudice against him and

[6] See also Galatas v. United States, 8 Cir., 80 F.2d 15, 23, 24, certiorari denied, 297 U.S. 711, 56 S.Ct. 574, 80 L.Ed. 998.

consequently reflected upon her credibility as a witness. And there was no issue as to the fact that she had tried to blackmail the appellant. She freely admitted it and also made it abundantly clear that she testified against him with all the fury of a woman scorned. At most the ruling was quite harmless.

It is true that in charging the jury the court did not clearly distinguish transporting for the purpose of prostitution, or commercialized vice, from doing so for the purpose of debauchery or other immoral purposes and defined prostitution too broadly as being "the practice of sexual intercourse between a man and a woman outside of the marital relationship," leaving the jury free to convict if it found that the transportation was for any of those purposes. The objection taken was not based upon any faulty definition of terms, which would doubtless have been corrected had it been called to the court's attention, but "on the ground that there is no evidence in the record that would indicate that the Government maintains that she [Mrs. Sorrentino] was taken there [Florida] for immoral purposes." The appellant's purpose in transporting the woman from New York to Florida was of course all important. Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331; Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12. What was done in Florida after the transportation was relevant only as indicative of that purpose. Though the government did put its emphasis upon the evidence showing acts of prostitution by Mrs. Sorrentino in Florida after the transportation, done with the appellant's knowledge and approval and to his pecuniary gain, it did not abandon any other alleged purposes for which he transported her there and which the statute made criminal. He admitted, as Mrs. Sorrentino or "Joyce" had testified at length, that he had had illicit relations with her before he went to Florida. He also testified that he went there soon after she and the woman who was convicted as his co-conspirator, sometimes known as "Betty," had gone and that when he reached Miami he went to the El Chico Hotel where he found the two women. When asked where he stayed then, he answered, "At the El Chico." The next question was "Where did Joyce stay?" and his answer was, "With me." The following question was, "Where did Betty stay?" and he answered "At the El Chico." The reasonable import of this testimony is that Joyce stayed with him at the El Chico during that time to engage in their previous activities while Betty merely stayed at the El Chico. The jury thus had evidence from which it could find that at least part of the appellant's purpose in transporting Joyce to Florida was the immoral one of continuing his illicit relations with her as the occasion offered. So we find no error in the broad submission of the case to the jury.

Exception was taken because of the failure to charge, as requested, to the effect that Mrs. Sorrentino's testimony should be considered with great caution and subjected to the closest scrutiny by the jury. This might have been done and Speiller v. United States, 3 Cir., 31 F.2d 682, does hold that it is reversible error not so to charge concerning the testimony of the woman alleged to have been illegally transported, at least where it is uncorroborated and the woman has committed perjury. But here, while it is true that Mrs. Sorrentino had made a sworn statement to an F. B. I. agent wholly at odds with her testimony on the trial as to appellant's part in the trip to Florida, her testimony at the trial was corroborated in several material respects. Moreover, this jury had ample warning that the witness was ill disposed toward the appellant and there was no reversible error in failing to add to the usual instructions as to credibility special ones in the requested language. Cf. Hilliard v. United States, 4 Cir., 121 F.2d 992, 1000, certiorari denied, 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503. The substance of the remaining requests to charge which were denied and are now relied on were all adequately covered in the charge as given.

While the jury was deliberating it sent to the court an inquiry as to whether or not it might make a recommendation for clemency. The judge called the attention of counsel for the parties to the request and told them that he intended

to answer it, "Yes." No objection was made nor request that the answer be qualified in any way. Now it is argued that the judgment should be reversed because the judge did not recall the jury and answer their query in open court or indicate also that such a recommendation would not be binding upon him. See Miller v. United States, 37 App.D.C. 138, certiorari denied 231 U.S. 755, 34 S.Ct. 323, 58 L.Ed. 468; People v. Sherwood, 271 N. Y. 427, 3 N.E.2d 581; People v. Lynch, 284 N.Y. 239, 30 N.E.2d 577; People v. Roppolo, 263 App.Div. 995, 33 N.Y.S.2d 257; and People v. Santini, 221 App.Div. 139, 222 N.Y.S. 683. This informal way of disposing of the request without recalling the jury was here but a harmless irregularity, Dodge v. United States, 2 Cir., 258 F. 300, 7 A.L.R. 1510, certiorari denied, 250 U.S. 660, 40 S.Ct. 10, 63 L.Ed. 1194, the situation not being comparable to that shown in Little v. United States, 10 Cir., 73 F.2d 861. As to the judge's failure to tell the jury that he would not be, bound by their recommendation, the state court cases seem to be in conflict as to whether this was erroneous at all. Compare People v. Warner, 289 Mich. 516, 286 N.W. 811, and People v. Roppolo, supra, with State v. Cook, 227 Iowa 1212, 290 N.W. 550, and State v. Gill, 14 S.C. 410; see also 17 A.L.R. 1158; 87 A.L.R. 1371 and 138 A.L.R. 1247; cf. United States v. Parker, 3 Cir., 103 F.2d 857, 863, certiorari denied, 307 U.S. 642, 59 S. Ct. 1044, 83 L.Ed. 1522. But we need not decide which line of authority to follow. It is sufficient to say here that we think there was no "plain error." Consequently, appellant's failure to object is binding upon him. Rules of Criminal Procedure 51, 52 (b). Assuming there was an error it was one of omission which should have been called to the judge's attention for it is just such error that, if noticed, can easily be corrected on the spot. See, e. g., United States v. Monroe, 2 Cir., 164 F.2d 471, 474.

■ The last question concerns matters arising after judgment and appeal. While the appeal was pending there was a motion in this court for a new trial which was treated as an application to remand to the district court for decision, on that motion. We so remanded and the trial judge denied the motion upon the affidavits filed and argument of counsel thereon without taking testimony. It is now urged that doing so was error. The only support for the motion was an affidavit by the bailiff in charge of the jury to the effect that while the jury was deliberating the forelady called him to the door of the room and requested him to ask the judge whether the jury might return a divided verdict. He did not inform the judge of the request but told the forelady at once that a divided verdict could not be returned. At the hearing before the district judge the government not only relied on an affidavit of the forelady denying that she made any such request of the bailiff or that he had answered as his affidavit indicated but also on another affidavit of the bailiff categorically repudiating his first affidavit and supporting the forelady's denial that the episode had taken place. Upon such a weak showing the district judge was well within the exercise of his sound discretion in denying the motion without further investigation as to the actual facts. It does not appear that any reason was given him to believe that further investigation would add evidence to support the motion and the credibility of the bailiff was so shaken by his repudiation of his first affidavit that the affidavit of the forelady was, and should have been, held sufficient to defeat the motion on the facts.

Judgment affirmed.